cision to which he was neither a party nor privy. The record is no evidence against him, and the plaintiff cannot recover, claiming, as she does, under that record.

Judgment for defendant.

*Huffington*, for plaintiff.
*Bates* and *Frame*, for defendant.

—•»»❁❀❂««•—

## AZARIAH QUINBY *vs.* WILLIAM BOYD.

On a sale of goods to one for another, the legal liability depends on the question to whom the credit was given, which may be ascertained by the entry on the books, and other circumstances.

ASSUMPSIT for lumber sold and delivered. Plea, the general issue.

John Montgomery a witness, after qualifying himself on the *voire dire*, proved the sale of the lumber to Boyd, and swore that the credit was given to him. He knew that the lumber was to build a house for one M'Glivet, but Boyd built the house by contract, and the credit was given exclusively to him. The entry on plaintiff's books was,

" William Boyd  Dr. (for Anthony M'Glivet.")

The witness was an agent for Quinby, in the sale of the lumber. Sometimes made out bills in his own name. M'Glivet has failed.

themselves to be purchasers at sheriff's sale, on execution process against Jonathan Lowber, of the land out of which dower was assigned.

But the court said that this proceeding by petition under the intestate law, was a proceeding against the heir; that the petition did not set out that any other persons were interested in the matter, nor seek to make them parties; that not being parties they were not affected by these proceedings; and that it would be safer to act only on the rights presented by the petition. In all cases where the husband dies out of possession, the practice of the court requires a citation to purchasers or others in order to make them parties; but in proceedings against the heir third persons are not affected, and are not entitled to object. If they have the right to object, they are *bound* to do it, and the decree of the court binds them whether they object or not. And how are they to be notified? The petition does not set out their interest, and the court can order no citation. Are they bound to take notice of the application? It is better to regard the proceeding as affecting only the rights of the parties on the record; the heirs at law, and such others as the petitioner chooses to make parties by setting out their interest and issuing citation. The Orphans' Court, for these reasons, refused to hear the objections of the purchaser, whose interest did not appear by the record, and could not be affected by the proceeding.

*Hamilton*, for defendant contended, that the lumber was sold by Montgomery as his own, and sold to M'Glivet. And he proved by M'Glivet's assignee that Montgomery had placed a bill in his hands for this lumber, telling witness that he had told Mr. Boyd that he was willing to take a part of his account. He did not propose to this witness to come in for a dividend of M'Glivet's estate. The bill was rendered in Montgomery's name, and he afterwards brought suit in his name which was struck off, and the present action brought, as Mr. Hamilton urged, to enable Montgomery to be a witness.

*Mr. Bayard*, however, explained that the bringing the first suit was his own mistake, which he was led into by the informality of the account, not having seen his client.

The plaintiff had a verdict.

*R. H. Bayard*, for plaintiff.
*Hamilton*, for defendant.

—➤»»⊙❋⊙«««—

## PRISCILLA JEANS *vs.* ABEL JEANS.

On a decree of divorce for the adultery of the husband, the court allowed the wife one third of his lands for life; and appointed commissioners to assign it.

*The Court* also gave to the wife the custody of her daughters, and made her an annual allowance for their support.

Writ of habere facias possessionem issued to put the complainant in possession.

PETITION for divorce, *causa adulterii*, (see *ante* p. 38.)

The petition charged the respondent with general adultery with one Mary Ann Thompson whom he kept; and by whom he had had an illegitimate child. It also charged specific acts in the months of May and June 1835; and on the 13th of July 1836, at Brandywine hundred. The general facts charged were made out by the proof, and the last specification clearly proved.

Plaintiff and defendant were married in 1819; and had lived happily together for many years, and until very recently. They had four children, three girls aged respectively fourteen, thirteen and eleven years, and one boy aged seven years.

The respondent made no defence, except in reference to the division of his property, which was estimated at about twenty thousand dollars; and the custody of his children.

The question arose, whether the court would make to the petitioner an allowance of a gross sum; divide the property between them, or make an annual allowance.

*Bayard*, for the petitioner, contended for the former, and claimed one-half the estate. It had all been acquired since their marriage,